ISRAEL H. MARGOLIES, Plaintiff-Appellant, v. LANDY & ROTHBAUM *et al.*, Defendants-Appellees.

Third District   No. 3—84—0518

Opinion filed September 11, 1985.

Laura A. Kaster and Richard P. Steinken, both of Jenner & Block, of Chicago, for appellant.

David J. Dubicki, of Kavanagh, Scully, Sudow, White & Frederick, P.C., of Peoria, and Ian H. Levin and Deborah Fish, both of Karon, Morrison & Savikas, Ltd., of Chicago, for appellees.

JUSTICE STOUDER delivered the opinion of the court:

This appeal arises from a judgment entered in favor of defendants Landy & Rothbaum, an accounting firm, and two of its accountants individually and against plaintiff, Israel Margolies, by the circuit court of Peoria County. The complaint as amended contained four counts. The first count alleged professional malpractice in the preparation of a projection of net earnings for 1980 prepared by Landy & Rothbaum less than two months before the year's end. The second count was for negligent misrepresentation for alleged reliance on the projection as the basis for the purchase price of Margolies' business, Key Industries, Inc. The third count was for breach of an oral contract between the accountants and Margolies, and the final count contained a demand for punitive damages which was ruled upon at the close of plaintiff's case when the trial court found that there was no evidence of wilfulness or recklessness on the part of defendants. Following a bench trial, the judge found in favor of defendants as to the remaining three counts, and this appeal follows.

The facts of this case are largely undisputed. In October 1980, Israel Margolies learned that a Mr. Scher, the owner of Selective Gifts Institute, was interested in purchasing Margolies' business Key Industries, Inc. (Key). Key was in the business of manufacturing and selling advertising speciality items which were imprinted with the advertiser's name and were usually given as complimentary items by the advertiser to his customers. Key had been steadily growing since Margolies founded the company in the early 1960's. Margolies was the principal stockholder, and all evidence indicates that he made all major business decisions. During preliminary negotiations, Margolies, when asked by Scher what he would consider selling Key for, mentioned that he wanted eight times net earnings, which he estimated at around $250,000 for 1980 or $2,000,000. When Scher indicated he would consider the $2,000,000 figure proposed by Margolies, Margolies contacted Landy & Rothbaum, who had been his accountants since 1962 and asked McGrath, a partner, to give him his best estimate of what net earnings for Key would be for 1980. On November 10, 1980, Margolies phoned McGrath at Landy & Rothbaum and requested that he prepare a projection by November 12 for a meeting Margolies had set up with Scher on November 13. The projection prepared by Landy & Rothbaum estimated net earnings at $239,000. Margolies insisted that he would not consider less than $2,000,000, and Key was sold to Scher for that amount subject to a deescalation in purchase price or an option to rescind if the net earnings fell below $228,000. The net earning from the audited financial statement prepared for Key as of De-

cember 31, 1980, showed net earnings of approximately $343,000.

Plaintiff raises three issues on appeal. First, he argues that the trial court erred in denying his motion for leave to file a jury demand made immediately upon defendants' withdrawal of their demand 12 days before the trial was scheduled to commence. The second issue is whether the trial court applied an incorrect standard when it found that defendants were not guilty of professional negligence. And finally, plaintiff contends that the trial court applied the doctrine of contributory negligence rather than comparative negligence to deny plaintiff relief.

■ As to the first issue, section 2—1105 of the Code of Civil Procedure provides:

> "(a) A plaintiff desirous of a trial by jury must file a demand therefor with the clerk at the time the action is commenced. *** Otherwise, the party waives a jury." (Ill. Rev. Stat. 1981, ch. 110, par. 2—1105.)

In this case, plaintiff made no demand at the time he filed suit. When defendants answered, they made a jury demand in their answer. This demand was subsequently withdrawn by defendants on September 22, 12 days before the jury trial was scheduled to commence. Plaintiff immediately filed a motion for leave to file a jury demand, which the trial court denied. Plaintiff relies upon *Hernandez v. Power Construction Co.* (1978), 73 Ill. 2d 90, 382 N.E.2d 1201, and asks us to find that the trial court abused its discretion based upon this case. However, reading *Hernandez* and *Greene v. City of Chicago* (1978), 73 Ill. 2d 100, 382 N.E.2d 1205 (decided at the same time) together, the rule appears to be that good cause for the delay must be shown and that a showing of lack of prejudice to either party or to the court is insufficient to establish "good cause shown." *Greene v. City of Chicago* (1978), 73 Ill. 2d 100, 106, 382 N.E.2d 1205, 1209.

In this case, plaintiff has given no reason for delay in filing his jury demand other than his argument on appeal that defendants' withdrawal of their demand shortly before the trial was unfair because jury cases cannot be set for trial as quickly as a bench trial so that plaintiff has already lost the benefit of early adjudication. However, although this argument succeeded in *Hernandez*, the facts of this case are different in several important respects. First, in *Hernandez* the prospective jury was in the courtroom when defendant withdrew its demand, and second, the delay resulting from setting the case on the jury calendar was some four years. The Illinois Supreme Court in *Hernandez* emphasized that each case must be decided on its own facts and that "[w]e do not purport to establish a *per se* rule requiring that a party's

late jury demand be granted whenever his opponent withdraws his own demand immediately before trial." (*Hernandez v. Power Construction Co.* (1978), 73 Ill. 2d 90, 99, 382 N.E.2d 1201, 1205.) Therefore, because neither of the factors which the supreme court found constituted "good cause" in *Hernandez* exist in this case, we find that it was not error for the trial judge to deny plaintiff's motion for leave to file a jury demand.

■ The second issue raised by plaintiff is based upon comments by the trial judge which were made at the time he announced judgment in favor of defendants as to all three remaining counts (excluding the punitive damage count) at the close of the trial. These remarks, plaintiff argues, indicate that the judge applied the wrong standard of care in deciding this case because the judge's remarks indicate that he varied the applicable standard based upon Margolies' and the accountants long standing relation. Plaintiff further argues that the trial judge refused to impose liability because the accountants and Margolies had a direct ongoing relationship and not a third-party relationship, and finally, as part of the same argument, that the trial court refused to impose liability because the report was unaudited. We have reviewed the judge's remarks and find that he considered this case in light of the correct standard of care imposed upon an accountant. In his remarks the judge stated

"Plaintiff's exhibit 10 (General Standards, ET Section 201 (Rule 201)) which is the standard, clearly put an accountant where an accountant belongs, that is a very high level of professional responsibility similar to any other profession; legal, medical, or what have you."

Nowhere in the proceedings is any reference made by any party or the court to a different standard of care, a lesser standard or a variable standard. Both plaintiff and defendants presented expert testimony as to whether the projection complied with Rule 201, and both parties argued throughout the proceedings that Rule 201 was the correct standard. Therefore, we find that the judge applied the correct standard of care in this case. Furthermore, the judge's remarks that the report was unaudited were perfectly proper, as the nature of the obligation undertaken by the accountant is a factor in every malpractice case. In Annot., 92 A.L.R.3d 396 (1979), the article quoted by plaintiff, considerable discussion is given to the nature of the employment agreement between an accountant and his client, and the article states:

"Other factors bearing on the nature of the accountant's obligation which may affect his liability include statements in or accompanying his report which qualify or explain it, and the exist-

ence of a fiduciary relationship with his client." (Annot., 92 A.L.R.3d 396, 400 (1979).)

Therefore, the remarks made by the judge pertaining to the relationship of the parties and the fact that the report was unaudited bear directly upon the accountant's obligation to his client, not, as plaintiff argues, to a refusal to impose liability for any of these reasons.

We have reviewed the evidence in this case specifically as to the proof pertaining to the standard of care and find that sufficient evidence was presented at trial to support the trial court's decision. As previously mentioned, experts testified for both plaintiff and defendants. As could be expected, the plaintiff's expert gave his opinion that Rule 201 was violated, while defendants' experts testified that no violation had occurred in preparation of the projection. Furthermore, experts on both sides gave considerable explanation of the methodology which they considered proper as well as detailed analyses of the value of Key at the time it was sold. In his remarks, the judge discussed credibility of the witnesses at length, and nothing in his remarks indicates that he did not consider the expert testimony for both plaintiff and defendants in deciding as he did to find in favor of defendants. We, therefore, find that the trial court properly considered the evidence in light of the correct professional standards and that the evidence supports the trial court's decision.

In plaintiff's final argument on appeal, plaintiff asserts that the trial court erroneously applied the doctrine of contributory negligence to bar recovery when it should have used comparative negligence. There is no indication that the trial judge applied either theory in this case. The plaintiff's argument is bottomed on the assumption that the denial of defendants' motion under section 2—1110 (Ill. Rev. Stat. 1981, ch. 110, par. 2—1110) somehow established defendants' liability. The purpose of section 2—1110 is for the judge in a nonjury trial to assess the plaintiff's proof and to find in favor of defendants in the event plaintiff has failed to make out a *prima facie* case. (See *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 407 N.E.2d 43.) This is obviously not a determination of liability as to either party, and, therefore, plaintiff's argument is without foundation as there is no indication that the trial judge applied the doctrine of contributory negligence.

For all of the above reasons, we affirm the decision of the circuit court of Peoria County.

Affirmed.

HEIPLE, P.J., and BARRY, J., concur.