**FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for Crescent Federal Savings Bank**

v.

**Kevin C. SCHOENBERGER, et al.**

No. 89–2756.

United States District Court,
E.D. Louisiana.

Jan. 3, 1992.

Robert Stephen Rooth, Corinne Ann Morrison, Dian Evans Kastl, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for FSLIC and Federal Deposit Ins. Corp.

Michael Richard Allweiss, David Howard Bernstein, Lowe, Stein, Hoffman, Allweiss & Hauver, New Orleans, La., Lona L. Triplett, John R. Gerstein, Ross, Dixon & Masback, Washington, D.C., for William F. Finegan and J.K. Byrne & Co.

John D. Wogan, Monroe & Lemann, New Orleans, La., for Richard B. Montgomery, III.

Edwin G. Preis, Jr., Laura Katherine Austin, Preis & Kraft, Lafayette, La., for N. River Ins. Co.

Donald Albert Hammett, John Villars Baus, Jr., Hammett & Baus, New Orleans, La., for New England Ins. Co.

Paul A. Bonin, Leonard Louis Levenson, Levenson & Bonin, New Orleans, La., for Kendall Rosenberg.

Kendall Rosenberg, pro se.

John Patrick Beauchamp, Phelps Dunbar, New Orleans, La., for Keven C. Schoenberger.

Carl W. Cleveland, George Paul Vedros, Cleveland, Barrios, Kingsdorf & Casteix, New Orleans, La., for Glen A. Slavich.

Dando B. Cellini, Victoria Knight McHenry, McGlinchey, Stafford, Cellini & Lang, New Orleans, La., David Ray McAtee, Gibson, Dunn & Crutcher, Dallas, Tex., for Price Waterhouse.

WICKER, District Judge.

This matter is before the Court on motions for summary judgment filed by defendants, J.K. Byrne & Co. ("JKB"), William Finegan ("Finegan"), and The North River Insurance Company ("North River").[1]

Oral argument was heard on the motions and after considering the arguments presented, the memoranda of counsel, the record, and the applicable law, IT IS ORDERED that the motions for summary judgment are DENIED.

On June 20, 1986, the Federal Savings and Loan Insurance Corporation ("FSLIC") was appointed receiver of Crescent Federal Savings Bank ("Crescent") due to its insolvency and unsound condition to transact business. JKB is an accounting firm that had performed auditing services for Crescent from 1981—1985, and Finegan is the JKB partner who was responsible for the Crescent account. On June 19, 1989, the FSLIC filed this suit against several defendants including JKB, Finegan and their insurer North River. Pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), the FDIC replaced the FSLIC as the proper party plaintiff in this action.

In its complaint, the FDIC alleges three distinct causes of action against JKB. First, that JKB breached its contract with Crescent by failing to perform its duties as promised in the engagement letter. Second, that JKB breached its fiduciary duty owed to Crescent as Crescent's auditor. Third, the FDIC alleges that JKB was negligent in the performance of its tasks as auditor. It is the sole contention of JKB in this motion for summary judgment that all of these claims have prescribed.

Both federal and state limitation periods depend on whether the claim is based in tort or contract. Therefore, the first point of inquiry must be whether these claims are what they purport to be. There is no dispute that the FDIC's third claim of negligence is a true tort claim. JKB argues that the other claims are simply different expressions of the same tort claim. The FDIC has not, and cannot in this case, state claims for breach of contract and breach of fiduciary duty, which have longer prescription periods than tort claims.

---

1. North River, the insurer of JKB and Finegan, has adopted the memoranda of its insureds, therefore its motion for summary judgment and the motion of JKB and Finegan will be referred to as JKB's motion.

■ In order for the FDIC's allegations of professional malpractice to rise to the level of a breach of contract claim, Louisiana law requires non-feasance of a specifically warranted result. *Carey v. Pannell, Kerr, Foster,* 559 So.2d 867 (La.App. 4th Cir.1990). Malperformance of a professional services contract gives rise only to an action in tort. *Elzy v. ABC Ins. Co.,* 472 So.2d 205 (La.App. 4th Cir.), *writ denied,* 475 So.2d 361 (1985).

■ The FDIC alleges that JKB made these express warranties in the engagement agreement, including a promise to examine the financial records in accordance with generally accepted auditing standards ("GAAS") and to disclose any material weaknesses in internal controls. Accountants, like physicians and lawyers, owe a duty to perform their services with that degree of skill and competence reasonably expected of persons in their profession in the community. *Bancroft v. Indemnity Ins. Co. of N. Am.,* 203 F.Supp. 49 (W.D.La.), *aff'd* 309 F.2d 959 (5th Cir.1962). By definition an auditor owes a duty to conduct the audit in accordance with GAAS, and identifying weaknesses in internal controls is the very essence of an audit. In other words, these "warranties" simply reiterated a standard of care imputed to any accountant's auditing services.

No Louisiana law addresses the question of whether the parties can convert standard duties of care to contractual obligations by including them in a professional services contract. The FDIC cites several Illinois cases holding that accountants may be held, as a provision of a contract, to perform services in accordance with expected standards of professional conduct. *In Re Am. Reserve Corp.,* 70 B.R. 729 (N.D.Ill.1987); *Holland v. Arthur Anderson & Co.,* 127 Ill.App.3d 854, 82 Ill.Dec. 885, 469 N.E.2d 419 (1984). However, these cases specifically recognized that Illinois law differed from other jurisdictions, and rejected the holding of New York cases that these allegations sound in tort, not contract. *In Re Am. Reserve,* 70 B.R. at 736.

This Court finds more compelling the language of Judge Wisdom of the Court of Appeals for the Fifth Circuit with respect to medical malpractice.

It is the nature of the duty breached that should determine whether the action is in tort or in contract. To determine the duty one must examine the patient-physician relationship.... The duty of due care is imposed by law and is something over and above any contractual duty. Certainly, a physician could not avoid liability for negligent conduct by having contracted not to be liable for negligence. The duty is owed in all cases, and a breach of this duty constitutes a tort. On principle then, we consider a malpractice action as tortious in nature whether the duty grows out of a contractual relation or has no origin in contract.

*Kozan v. Comstock,* 270 F.2d 839, 844—45 (5th Cir.1959), quoted in *Sciacca v. Polizzi,* 403 So.2d 728, 730 (La.1981). The *Kozan* court noted that if the physician agreed "to effect a cure or warrant[ed] that a particular result will be obtained," there may be an action in contract. The "warranties" that the FDIC highlights do not promise a result but merely reaffirm duties already imposed by the law and professional standards. The court finds that breaches of those duties sound in tort, not contract.

■ Similarly, the FDIC's attempt to convert a malpractice claim to a breach of fiduciary duty claim (subject to a ten year prescription period, La.Civ.Code art. 3499) is unavailing. The Louisiana Court of Appeals rejected a similar attempt in a legal malpractice action absent evidence that the attorney warranted a specific result. *Gravois v. New England Ins. Co.,* 553 So.2d 1034, 1039 (La.App. 4th Cir.1989). Other federal circuit courts have held that accountants do not owe a fiduciary duty to their clients when providing services as auditor; rather the nature of an independent auditor is that it will perform the services objectively and impartially. *Franklin Supply Co. v. Tolman,* 454 F.2d 1059, 1065 (9th Cir.1971); *see also Painters of Philadelphia District Council No. 21 Welfare Fund v. Price Waterhouse,* 879 F.2d 1146 (3rd Cir.1989). Indeed, even the

Supreme Court case cited by the FDIC emphasizes the independent nature of the auditor and the duty of the auditor to issue opinions "notifying the investing public of possible potential problems inherent in the corporation's financial report." *United States v. Arthur Young & Co.*, 465 U.S. 805, 818, 104 S.Ct. 1495, 1503, 79 L.Ed.2d 826 (1984). Although an auditor may be charged with duties, they are not duties as a fiduciary. As such, the FDIC's claim for breach of fiduciary duty is actually another claim for malpractice sounding in tort.

■ The FDIC is afforded a three year limitation period for actions sounding in tort. 28 U.S.C. § 2415; 12 U.S.C. § 1821(d). FIRREA clarified the date of accrual of causes of action brought by a federal receiver or conservator as the later of the date the FDIC is appointed receiver and the date the cause of action accrues. 12 U.S.C. § 1821(d)(14)(B). Although FIRREA was not enacted until August, 9, 1989, its limitations provisions are procedural and thus apply retroactively. *Fust v. Arnar–Stone Labs, Inc.*, 736 F.2d 1098, 1100 (5th Cir.1984) ("Statutes of limitation, being procedural and remedial in nature, are generally accorded retroactive effect, unless they are unconstitutionally cast."); *FDIC v. Howse*, 736 F.Supp. 1437 (S.D.Tex. 1990). Furthermore, FIRREA's apparent purpose was merely to resolve a split in the circuits regarding the date of accrual. *See Howse*, 736 F.Supp. at 1446. Since this suit was filed one day before the end of the three year period following receivership, the suit is timely under the federal limitations statute.

■ However, when a federal receiver brings an action standing in the shoes of the institution, the court must conduct a second step of analysis to determine whether the claim had expired before the receiver was appointed. The FDIC cannot rely alone on the federal limitations statute because transfer of a cause of action to the FDIC cannot revive a claim that already expired under the state prescription period. *FDIC v. Former Officers and Directors of Metro. Bank*, 884 F.2d 1304 (9th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 3215,

110 L.Ed.2d 662 (1990); *RTC v. International Ins. Co.*, 770 F.Supp. 300 (E.D.La. 1991).

■ The prescription period for these tort actions is one year from the day the injury or damage is sustained. La.Civ. Code art. 3492; *Carey v. Pannell, Kerr, Foster*, 559 So.2d 867 (La.App. 4th Cir. 1990). The prescription period begins to run when the plaintiff sustains injury ostensibly caused by the alleged negligence. *Rayne State Bank & Trust Co. v. National Union Fire Ins. Co.*, 483 So.2d 987, 995 (La.1986). This injury must manifest itself with "sufficient certainty to be susceptible of proof in a court of justice." *Rayne State Bank*, 483 So.2d at 996. The plaintiff must have knowledge of the tort and its resulting damage, but this knowledge may be either actual or constructive. *Rhoden v. Wegmann*, 569 So.2d 35 (La.App. 4th Cir.1990). As recently clarified by the Louisiana Supreme Court, "The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a delictual action." *Braud v. New England Ins. Co.*, 576 So.2d 466, 468 (La.1991). However, the plaintiff need not sustain all or even the greater part of the damages occasioned by the negligence, "[a]ny appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue." *Id.*

■ To succeed at summary judgment, JKB would have to show that Crescent had constructive knowledge of its negligence, and some consequential appreciable harm, before June 20, 1985, one year before the FSLIC was appointed receiver of Crescent. It must also show that there is no genuine issue about this fact. Crescent admits that it had knowledge of JKB's negligence by October, 1985, when JKB's successor, Price Waterhouse, informed Crescent that JKB might not have been conducting its audits in accordance with GAAS. The FDIC argues that JKB's allegations that Crescent knew of malpractice before then are unsubstantiated.

For example, the minutes of a Crescent Executive Committee meeting of October 5, 1984, include a recommendation that the bank interview other accountants to replace JKB because "certain problems may have been avoided with proper auditing procedures." This document is unsigned, unauthenticated by any affidavit, and therefore cannot be the grounds upon which JKB bases its summary judgment. Fed.R.Civ.P. 56(e). Although a movant need not authenticate documents produced and authored by the opponent, *Anderson v. Cramlet*, 789 F.2d 840 (10th Cir.1986), that is not the case here. Although the plaintiffs produced the document, the defendants allegedly authored it and thus it must meet the requirements of Rule 56(e).

The Board of Directors and Officers of Crescent were no doubt dissatisfied with JKB's performance, and perhaps even suspicious of it. They dismissed JKB and hired new auditors in June of 1985. However, there is conflicting testimony regarding the extent of their knowledge about JKB's performance. Directors Walter Johnson and Dean Westphal both testified that they were unaware that Crescent may have a potential claim against JKB until Price Waterhouse informed them of the magnitude of the problems in October, 1985.

JKB also highlights a comment of Lloyd Giblin, acting President, in a May 9, 1985 meeting, that Crescent's books were out of balance although JKB had stated that they were not. Mr. Giblin subsequently testified in deposition that at this time he knew very little about the accounting problems at Crescent and he had attributed any mistakes to Kendall Rosenberg, the Controller. The FDIC admits that the Board and Officers were aware of Crescent's troubled condition on May 9, 1985, but there is no evidence that they attributed this condition to JKB before October, 1985. Even in a June 13, 1985 Board of Directors meeting, the Board's Audit Committee and the Controller, Wayne Green, communicated Price Waterhouse's findings of accounting discrepancies to the Board. No one attributed these discrepancies to JKB, instead they were thought to be the fault of the previous Controller, Mr. Rosenberg.

The sum of this evidence is that a genuine issue of material fact exists with respect to whether Crescent had, or should have had, knowledge of JKB's negligence and its resulting harm by June 20, 1985. Accordingly, JKB's motion for summary judgment is DENIED.