JERRY CLARK EQUIPMENT, INC., Plaintiff-Appellee, v. ROGER HIB-BITS, d/b/a A A A Bookkeeping Service, Defendant-Appellant.

Fifth District   No. 5—91—0640

Opinion filed April 12, 1993.—Rehearing denied May 17, 1993.

Roger M. Hibbits, of Clayton, Missouri, appellant *pro se*.

David L. Antognoli, of Bernard & Davidson, of Granite City, for appellee.

JUSTICE LEWIS delivered the opinion of the court:

This case is on appeal from a judgment entered on a jury verdict finding the defendant, Roger Hibbits, doing business as A A A Bookkeeping Service, negligent in performing accounting and tax services for the plaintiff, Jerry Clark Equipment, Inc. Defendant raises several issues on appeal. For the reasons more fully explained hereinafter, we affirm the trial court.

We first summarize the procedural history of the case. Plaintiff filed a motion for preliminary injunction on August 15, 1988, alleging that defendant had performed accounting and tax services for plaintiff through his A A A Bookkeeping Service (AAA), that plaintiff had terminated defendant's services as of April 1988, and that despite repeated demands for plaintiff's corporate books and records, defendant had failed and refused to turn over the requested records. Defendant then filed an answer and counterclaim. On September 1, 1988, the trial court conducted an evidentiary hearing, at which time defendant turned over a portion of plaintiff's records. The court denied plaintiff's motion for preliminary injunction and instructed the parties that their future remedies were through legal rather than equitable actions, and that plaintiff could raise any issues regarding additional records needed through discovery proceedings.

On December 14, 1988, plaintiff filed its amended complaint, which alleged that defendant negligently failed to perform accounting services and negligently failed to prepare corporate income tax returns for three years and requested compensatory and punitive damages. On May 12, 1989, defendant filed its answer to the amended complaint, an amended counterclaim, and a third-party petition against Boris Elieff (Elieff), the former owner of AAA. On February 8, 1991, the court entered an order which found defendant's third-party complaint to be "abandoned."

Finally, on June 19, 1991, the jury trial began on plaintiff's amended complaint and defendant's counterclaim. For purposes of this opinion, we will summarize the evidence submitted to the jury in this three-day trial. As particular evidence relates to the issues involved, we will detail that evidence specifically as it applies to the issues.

From 1966 until November 1, 1985, Elieff had owned and operated AAA, which did accounting and tax work for its clients. From 1980 until the business was sold to defendant, Elieff had performed all of the personal and corporate accounting and tax work for plaintiff. Elieff sent out monthly statements for $75 to plaintiff for all work done by AAA for each month. Plaintiff paid the $75 fee promptly each month after receipt of the bill. Plaintiff was a sole proprietorship until April of 1984, when it was incorporated. Elieff set up the corporation and prepared the initial corporate income tax return for filing.

Both before and after the sale to defendant, Diane Timmons (Timmons), plaintiff's secretary and an officer of the corporation, stopped by AAA each month to drop off papers or sign documents. Timmons would customarily pick up any tax returns that needed to be filed, and she would mail them herself. She testified that she did not read the tax returns or other tax papers before signing them, because she trusted the accountants, both Elieff and defendant, to take care of all tax matters.

When defendant purchased AAA on November 1, 1985, he and Elieff entered into a written purchase agreement. Under the agreement, Elieff agreed to continue to work for defendant for six months, to smooth the transition to the new owner, to introduce defendant to AAA's clients, and to finish up some of his work. Elieff decided to retire because he was going blind. After the sale to defendant, while he was still working at AAA, Elieff's eyesight was "very, very poor." Both Timmons and Elieff testified that at or near the time defendant bought AAA, Elieff introduced Timmons to defendant. Timmons testified that defendant was introduced as a certified public accountant (CPA) and a tax attorney. She agreed to allow defendant to continue plaintiff's accounting work after the sale. Defendant disputed that he had met Timmons before the sale and that he was introduced to her as a CPA and tax attorney.

Prior to February 15, 1987, the due date for plaintiff's 1986 fiscal-year corporate income tax return, defendant asked Timmons to try to find her copy of the corporate return for the prior year. Timmons testified that defendant did not tell her that he could not find his copy of

the 1985 return but only that he needed more information in order to prepare the 1986 corporate return. She told defendant that she did not keep copies of tax returns, because she thought AAA kept copies of everything. She looked for a copy but did not find one. Defendant did not remember if he had talked to Timmons about the missing return. Defendant testified that he went to plaintiff's place of business and asked Jerry Clark (Clark), the owner, about the return. Clark denied that defendant ever spoke to him about the missing return.

At the end of 1986, or the beginning of 1987, defendant also asked Timmons to provide him with additional information for the 1986 fiscal year. Defendant did not give Timmons a list of information to return to defendant. She prepared a master list of expenditures for the period and gave it to defendant. Defendant acknowledged that Timmons gave him the requested information but stated that the information provided raised new questions that required even more information to answer. The testimony regarding whether or not defendant asked for the additional information he needed was disputed. However, the evidence was undisputed that defendant never told Timmons or Clark that he could not prepare the 1986 return without the additional information, and it was undisputed that he did not tell them that the 1986 return was not prepared.

During defendant's ownership of AAA, Timmons had four to six conversations with him. When she talked to defendant, she always asked him if she needed to do anything else. She told him that if he needed anything else done, to let her know, and she would get it done. She testified that defendant responded each time that everything was taken care of, and if anything else was needed, he would let her know.

Defendant billed plaintiff three times, always for the same fee Elieff had charged, $75 per month. The last statement was mailed to plaintiff in September of 1986 and covered defendant's services for the months of June, July, and August of 1986, which plaintiff promptly paid. Defendant testified that the $75 fee covered all of plaintiff's accounting work, including corporate income tax returns.

Defendant testified that he never prepared the 1985, 1986, or 1987 corporate income tax returns for plaintiff, even though he did prepare Clark's personal returns for each of those years. Defendant testified that in July of 1987, he "assumed" that he was fired after he received a note from his daughter, who was an employee of AAA. That note, which was admitted into evidence, stated that Timmons had come into the office, that she was upset over a mistake defendant made in some of plaintiff's tax forms, and that she was looking for a

new CPA. Defendant testified that after he received the note, he felt that he was fired. However, he admitted that he was never told by either Timmons or Clark that he was fired, that he never directly or indirectly informed Timmons or Clark that he was terminating any accounting services on their behalf, and that he continued to do all of the rest of the accounting and tax work for those years, with the singular exception of not preparing the annual corporate income tax returns.

In April of 1988, Timmons became concerned over the manner in which defendant prepared Clark's 1987 personal income tax return. In May of 1988, she mailed defendant a letter terminating AAA's accounting services, requesting a bill from defendant for all prior services, and asking defendant to return all of the corporation's records. A couple of weeks passed, and Timmons had received neither a bill nor the records from defendant, so she began to call AAA. Timmons was not successful in retrieving the records. She finally hired an attorney, but the attorney's letters to defendant also failed to secure the records. Plaintiff filed its motion for preliminary injunction on August 15, 1988.

Gary Eichorn, the accountant plaintiff hired after firing defendant, testified as an expert witness, over defendant's objections. He testified that he prepared plaintiff's State and Federal corporate income tax returns for fiscal years 1985, 1986, and 1987. Each of the returns was filed on February 17, 1989. The penalties and interest assessed for all of the returns and not abated totalled $8,033.60. His accounting fees totalled $7,940.50. Additionally, because defendant did not give plaintiff certain minimal tax advice, plaintiff incurred unnecessary tax liability amounting to $2,285. The total of plaintiff's actual damages was $18,324.82.

Eichorn also testified that, in his opinion, defendant had not maintained plaintiff's accounting records and books in a manner consistent with that required of an accountant possessing ordinary competence for plaintiff's geographical area. His opinion was based entirely upon his own review of the books and records maintained by defendant during the period of November 1, 1985, through April of 1988. He testified that the customary scope of an accountant's duties for a closely held corporation, such as plaintiff, would include all regular accounting work, including tax planning and the timely preparation of all corporate income tax returns.

Eichorn testified that if an accountant desired to limit the scope of his duties, he should write a letter stating this to the client, specifically stating which accounting activities were to be terminated. He

testified that an accountant should not terminate services based only upon the note defendant received from his daughter in July of 1987. If an accountant needs additional information before preparing a tax return, an ordinarily competent accountant would make a specific request in writing to the client specifying exactly what is needed and when. If the return cannot be prepared without the information, the accountant should inform the client in writing that the return cannot be prepared until all of the information is provided.

The jury returned a verdict in favor of plaintiff, awarding actual damages to plaintiff in the amount of $18,324.82 and punitive damages in the amount of $18,000. The jury also returned a verdict in favor of defendant on his counterclaim for unpaid accounting fees, awarding him $1,000 of the $1,500 requested. Defendant appeals the judgments on the jury verdicts in favor of plaintiff. Plaintiff does not appeal the $1,000 judgment in favor of defendant.

Although defendant does not clearly articulate the issues in his brief, he apparently raises the following issues on appeal: (1) whether plaintiff can recover purely economic damages in a negligence case; (2) if plaintiff cannot recover purely economic damages, whether plaintiff has sufficiently proved a claim for breach of contract against defendant; (3) whether Elieff was liable for preparing the 1985 return instead of defendant; (4) whether plaintiff was contributorily negligent; (5) whether the trial court erred by allowing Eichorn to testify; (6) whether the actual damages awarded were excessive; and (7) whether the award of punitive damages was proper.

■ Defendant's first argument is based upon what is now called the "*Moorman* doctrine." (*Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443.) The general rule established by *Moorman* is that purely economic losses are not recoverable in a negligence action. Therefore, defendant argues, the losses suffered by plaintiff, which are undeniably and solely economic losses, cannot be recovered via plaintiff's negligence complaint. However, *Moorman* recognizes that there are exceptions to the general rule. For example, economic loss is recoverable where "one who is in the business of supplying information for the guidance of others in their business transactions makes negligent misrepresentations." *Moorman*, 91 Ill. 2d at 89, 435 N.E.2d at 452.

Plaintiff argues, and we agree, that this lawsuit is covered by the exception to the *Moorman* doctrine rather than the general rule. The exception to *Moorman*, as applied to an accountant in a negligence case, is dealt with in *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.* (1991), 224 Ill. App. 3d 559, 586 N.E.2d

600, *appeal allowed* (1992), 144 Ill. 2d 632, 591 N.E.2d 20. In the *Congregation* case, the accounting firm was sued for malpractice under a tort theory of negligence. The jury verdict against the accounting firm was contested on appeal as in violation of the *Moorman* doctrine. The court specifically held that the general rule of *Moorman* does not apply to accountants charged with negligent misrepresentation, where the accountant is in the business of giving information to clients to be used in the client's business transactions. (*Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.* (1991), 224 Ill. App. 3d 559, 586 N.E.2d 600.) The court in the *Congregation* case recognized that all malpractice by an accountant rests in some degree upon a violation of the parties' contracts, and as a result, it is proper to plead the case in either tort or contract or both. (*Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.* (1991), 224 Ill. App. 3d 559, 586 N.E.2d 600.) The same rule applies to attorney malpractice, which can also sound in tort or contract. *Collins v. Reynard* (1992), 154 Ill. 2d 48, 50.

Thus, based upon the reasoning of both the *Congregation* and the *Collins* cases, we hold that the jury verdict finding defendant negligent in providing accounting services to plaintiff is not barred by the *Moorman* doctrine. In holding that plaintiff was not required to bring this action under a contract theory, we do not have to reach defendant's second argument, that plaintiff did not properly plead or prove breach of contract.

■ Defendant next argues that the trial court should not have announced to the jury that Elieff was an employee of defendant, and because of the error, the verdict should be reversed. Although defendant's argument on this issue is not at all coherent, we assume that he apparently seeks to avoid his own liability by arguing that Elieff was an independent contractor, and that, therefore, Elieff alone was responsible for preparation of plaintiff's 1985 corporate return. However, defendant does not state any reason to absolve him of responsibility for failure to file corporate returns for three years, when, at most, Elieff was working for or contracted with defendant for six months of those three years. Plaintiff, on the other hand, asserts that Elieff was clearly an employee, not an independent contractor, and therefore, the instructions to the jury on this issue were proper. We find that, under the facts of this case, it does not matter whether Elieff was hired as an employee or contracted as an independent contractor with defendant.

Defendant makes an argument in which he confuses the concept of an independent contractor with what should be a subcontractor.

There is no evidence that plaintiff in any manner, shape, or form contracted with Elieff or controlled and oversaw the work of Elieff. Therefore, Elieff could not and was not an independent contractor as to the plaintiff. Elieff possibly could have been an independent contractor as to defendant, depending on the construction of the contract between defendant and Elieff. At best, Elieff would only be a subcontractor in relation to the plaintiff. There simply is no privity of contract between plaintiff and Elieff or facts that indicate that Elieff owed a duty to plaintiff to do plaintiff's tax work after Elieff sold his business to defendant. The defendant's argument on this point is without merit because he cannot escape liability even if we were to find Elieff negligent, which we cannot and will not do within this appeal. "[O]ne guilty of negligence cannot avoid responsibility merely because another person is guilty of negligence contributing to the same injury, even though the injury would not have occurred but for the negligence of the other person." *Sears v. Kois Brothers Equipment, Inc.* (1982), 110 Ill. App. 3d 884, 889, 443 N.E.2d 214, 219.

Therefore, the only issue before this court is whether the *defendant* was negligent. On review, when the jury verdict of negligence is challenged, the issue is whether the verdict is against the manifest weight of the evidence, when the evidence is viewed in the light most favorable to the plaintiff. (*Rainey v. City of Salem* (1991), 209 Ill. App. 3d 898, 568 N.E.2d 463.) We cannot find that the verdict in this case was against the manifest weight of the evidence on the issue of defendant's negligence.

The standard of care for an accountant, such as defendant, is a "very high level of professional responsibility," similar to that required of other professionals, such as attorneys and doctors. (*Margolies v. Landy & Rothbaum* (1985), 136 Ill. App. 3d 635, 638, 483 N.E.2d 626, 629.) We cannot say that defendant's work for plaintiff shows a very high level of professional responsibility, regardless of whom he employed or in what capacity. On the contrary, the evidence clearly demonstrates that defendant's failure to prepare the corporate returns for 1985 through 1987 was professionally irresponsible and negligent.

■ Defendant next argues that there was clearly contributory negligence on the part of plaintiff because neither Timmons nor Clark made any effort to assure that the corporation's returns had been filed. However, defendant does not cite a single case or any other authority to support his contention. Therefore, we could find that defendant has waived this argument on appeal. (*Britt v. Federal*

*Land Bank Association* (1987), 153 Ill. App. 3d 605, 505 N.E.2d 387.) Nevertheless, we will briefly discuss this issue.

Plaintiff correctly points out that a defendant claiming contributory negligence on appeal has the burden to demonstrate that the evidence, when viewed most favorably to the plaintiff, overwhelmingly requires a finding of contributory negligence on the part of the plaintiff. (*Rainey v. City of Salem* (1991), 209 Ill. App. 3d 898, 568 N.E.2d 463.) Because we have already fully summarized the evidence, we need not detail the evidence again. Suffice it to say that the jury's determination that plaintiff was not contributorily negligent was not against the manifest weight of the evidence. Accordingly, we find defendant's claim of contributory negligence to be without merit and unsupported by the evidence presented by either side at trial.

█ Defendant next argues that the trial court erred by allowing the expert witness to testify. However, once again, defendant does not present a single authority to support his contention. Under the rule of *Britt*, defendant has waived this issue on appeal, for failure to cite relevant authority to support his argument. (*Britt v. Federal Land Bank Association* (1987), 153 Ill. App. 3d 605, 505 N.E.2d 387.) Nevertheless, we do wish to make it clear that, from our review, Eichorn was properly qualified to testify as an expert in this case, given the fact that he had been an accountant for 29 years and worked for a CPA firm at the time of trial.

The fact that Eichorn is not a CPA himself, but only worked for a CPA firm, is not dispositive of the issue of whether he was qualified to testify as an expert on accounting standards. Eichorn's qualification as an expert was a matter of the trial court's sound discretion, and that decision should not be overturned absent a gross abuse of that discretion. (*National Surety Corp. v. Fast Motor Service, Inc.* (1991), 213 Ill. App. 3d 500, 572 N.E.2d 1083.) To qualify as an expert, one must possess specialized knowledge beyond that of an average person on a matter of fact related to the litigation. (*National Surety Corp. v. Fast Motor Service, Inc.* (1991), 213 Ill. App. 3d 500, 572 N.E.2d 1083.) The trial judge was presented with sufficient information regarding Eichorn's knowledge, training, skill, experience, and education to qualify Eichorn as an expert on the issue of what standard of conduct applies to accounting firms and CPA's, such as defendant.

█ The next part of defendant's argument is that the expert should not have testified regarding the standard of care applying to CPA's, since AAA is merely a bookkeeping service. Even though defendant has technically waived this issue, we will briefly discuss

why this argument fails. The facts clearly show that defendant, the owner of AAA, was a CPA and an attorney, practicing since 1961, with a master's degree in taxation. After defendant purchased AAA, plaintiff hired defendant to continue its accounting work, at least in part based upon defendant's qualifications. Timmons testified that she made the decision to stay with AAA because she thought defendant would do an even better job of taking care of the corporation's taxes, since he was both a CPA and attorney and Elieff was neither.

As a CPA and tax attorney, defendant cannot magically insulate himself against his own negligence by calling the business that he purchased a bookkeeping service. It does not matter what he calls his business. What matters is the nature of the obligation he undertakes for the client. (*Margolies v. Landy & Rothbaum* (1985), 136 Ill. App. 3d 635, 483 N.E.2d 626.) The obligation defendant undertook for plaintiff was the same as the obligation Elieff undertook when Elieff owned the business, which included, at a minimum, preparation of corporate tax returns and giving tax advice to the plaintiff. Defendant did neither and, therefore, failed to perform his duty to plaintiff. Furthermore, defendant either held himself out to plaintiff as a CPA or did nothing to dispel that belief by action or word. Therefore, the expert testimony regarding the standards and practices expected of a reasonably competent CPA were relevant to the jury's determination of defendant's negligence. Allowing Eichorn's testimony on these matters was not error, because he was qualified, the subject matter was highly relevant to the jury's determination of the ultimate issue of defendant's negligence, and the standard of care to which an accountant or an accounting firm should be held is a proper subject of expert testimony. *Margolies v. Landy & Rothbaum* (1985), 136 Ill. App. 3d 635, 483 N.E.2d 626.

■ Defendant's next argument is that the actual damages assessed by the jury were improper. Again, defendant does not cite a single authority to support his proposition. We invoke the rule of *Britt* again to find that defendant has waived this argument on appeal for failure to cite relevant authority to support his claim. (*Britt v. Federal Land Bank Association* (1987), 153 Ill. App. 3d 605, 505 N.E.2d 387.) The jury verdict assessing actual damages was based entirely upon matters of record and was for damages actually sustained by plaintiff as a result of defendant's negligence, and as such, the actual damages awarded to plaintiff were proper.

■ Defendant's final argument is that the jury should not have been allowed to consider the issue of punitive damages because there was no evidence from which the court could instruct on punitive dam-

ages, and that the verdict finding punitive damages should be reversed as against the manifest weight of the evidence. Defendant does cite authority on this issue, at least regarding the general rule that punitive damages are not favored and, because of their penal nature, the courts should be cautious to insure that they are not improperly or unwisely awarded. (*Hammond v. North American Asbestos Corp.* (1983), 97 Ill. 2d 195, 454 N.E.2d 210.) However, as plaintiff points out, it is equally well established that liability for punitive damages is supported where the wrong involves some violation of duty springing from a relation of trust or confidence, or where the fraud is gross, or the case presents other extraordinary or exceptional circumstances clearly showing malice and wilfulness. *Central Bank v. Ziaee* (1989), 188 Ill. App. 3d 936, 947, 544 N.E.2d 1121, 1127.

The evidence presented to the jury amply demonstrated that defendant, contrary to the trust and confidence plaintiff placed in him as an accountant, was guilty of acting with such gross negligence toward plaintiff as to indicate a wanton disregard of plaintiff's interest in not violating the Federal and State tax laws and in not running afoul of the Internal Revenue Service. Our former discussion of the evidence is replete with examples of defendant's utter disregard of his duty to plaintiff as an accountant and tax preparer, not the least of which is defendant's failure to inform plaintiff that he could not and did not prepare the 1986 return after not being able to locate a copy of the 1985 return. Under the circumstances, for defendant to continue to perform all other accounting duties but to indirectly conceal the fact that he had not prepared a 1986 return would be sufficient alone to submit the case to the jury on the question of punitive damages. The facts, however, demonstrate numerous other examples of defendant's wilful and wanton disregard in his duty to plaintiff, including refusal to turn over plaintiff's records to plaintiff, necessitating a lawsuit. Therefore, we hold that the award of punitive damages was proper and not excessive so as to send a message to defendant and all accountants throughout the State not to undertake preparation of tax returns for a client and then conceal the fact that the tax returns were not prepared or filed. *National Bank v. Doss* (1986), 141 Ill. App. 3d 1065, 1073-74, 491 N.E.2d 106, 111.

For the reasons stated above, we affirm the jury verdicts and judgments against defendant.

Affirmed.

WELCH and GOLDENHERSH, JJ., concur.