RESOLUTION TRUST CORPORATION,
Plaintiff,

v.

KPMG PEAT MARWICK, Peat Marwick
Main & Co., Peat, Marwick, Mitchell &
Co., and Ronald L. Friske, Defendants.

No. 93 C 0108.

United States District Court,
N.D. Illinois, E.D.

Feb. 17, 1994.

Michael Allen Childers, Securities & Exchange Com'n, Chicago, IL, Steven A. Hammond, Jeffrey R. Coleman, Hughes, Hubbard & Reed, New York City, Fay Clayton, Steven A. Ramirez, Robinson, Curley & Clayton, P.C., Chicago, IL, for plaintiff.

Robert D. McLean, Melville Willis Washburn, Linton Jeffries Childs, Jeffrey R. Tone, Sidley & Austin, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is defendants KPMG Peat Marwick, Peat Marwick & Main & Co., Peat Marwick, Mitchell & Co.,[1] and Ronald L. Friske's Motion to Dismiss portions of plaintiff Resolution Trust Corporation's Complaint.

### I. BACKGROUND

This lawsuit is brought by the Resolution Trust Corporation ("RTC") to recover damages in excess of $50 million allegedly caused by defendants' negligence, negligent misrepresentation, breach of contract, and breach of fiduciary duty in auditing Horizon Federal Savings Bank (formerly First Federal Savings and Loan Association of Wilmette) ("Horizon"). The Complaint states the audits were for the year ending December 31, 1982, and for periods ended August 31, 1983, through August 31, 1988. (Complaint ¶ 1) According to the Complaint, on January 11, 1990, the Director of the Office of Thrift Supervision determined that Horizon was insolvent and appointed the RTC as receiver. The RTC "thereby succeeded to all rights, title, powers and privileges of Horizon." (Complaint ¶ 7) The RTC further alleges that "in its corporate capacity [it] acquired pursuant to a contract of sale all professional liability claims previously held by the RTC as receiver," and now purports to bring suit in that corporate capacity. (Complaint ¶ 8)

The Complaint alleges, in short, that Peat Marwick mishandled the auditing of Horizon during that financial institution's ill-fated journey through the 1980s, and in fact is legally responsible for that fate. Defendant Ronald L. Friske is alleged to have been a partner in Peat Marwick, who served as engagement partner on the work performed in connection with the August 31, 1983, through August 31, 1988, audits. (Complaint ¶ 14) The Complaint ultimately asserts four separate claims for relief for negligence, negligent misrepresentation, breach of contract, and breach of fiduciary duty.

Defendants now move to dismiss (1) those portions of each claim for relief relating to Peat Marwick's engagements to audit the 1982 and 1983 financial statements of Horizon; (2) the first claim for relief (negligence) in its entirety; and (3) the fourth claim for relief (breach of fiduciary duty) in its entirety. The first attack on the Complaint is based on statute of limitations. The second attack on the Complaint is based on the Illinois *Moorman* doctrine, establishing that "purely economic losses are not recoverable in a negligence action." *Jerry Clark Equipment, Inc. v. Hibbits*, 245 Ill.App.3d 230, 236, 183 Ill.Dec. 931, 935, 612 N.E.2d 858, 862 (1993) (citing *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982)), *appeal denied*, 152 Ill.2d 560, 190 Ill.Dec. 891, 622 N.E.2d 1208 (1993). The third attack is based on the assertion that an independent auditor cannot be held to owe a fiduciary duty toward its client.

---

1. KPMG Peat Marwick is agreed by the parties to be a successor in liability to Peat Marwick Main & Co. and Peat, Marwick, Mitchell & Co. (Complaint ¶ 10; Answer ¶ 10) KPMG Peat Marwick and its predecessors are collectively referred to herein as "Peat Marwick" regardless of the title of the entity during the period of time being discussed.

■ A Rule 12(b)(6) motion to dismiss for failure to state a claim may be granted if it is beyond doubt that the plaintiff is unable to prove any set of facts that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The court must take all well-pleaded facts as true, and must view them in the light most favorable to the plaintiff. *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). Plaintiff furthermore is entitled to all reasonable inferences that can be drawn from the Complaint. *Id.*

## II. STATUTE OF LIMITATIONS ISSUES

■ Defendants' first attack on the face of the Complaint is directed at certain time periods of alleged activity that defendants assert are outside the statute of limitations. Specifically, defendants argue that Peat Marwick's Complaint as to audit work for 1982 and 1983 is untimely.

Plaintiff takes no issue with defendants' interpretation of the statutory scheme of limitations. The conflict here is over (1) whether plaintiff's pleadings on statute of limitations are too conclusory; and (2) whether plaintiff has adequately put defendants on notice of its theory that the Illinois discovery rule saves the allegations regarding the 1982 and 1983 work. *See Knox College v. Celotex Corp.*, 88 Ill.2d 407, 416, 58 Ill.Dec. 725, 729–30, 430 N.E.2d 976, 980–81 (1981). In Illinois the running of the period of limitations starts when "the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Id.* Because these points are the substance of the disagreement, the court will rule on merely those issues.

■ As far as the initial sufficiency of plaintiff's pleadings, federal, not Illinois pleading requirements apply to this case. *See Hanna v. Plumer*, 380 U.S. 460, 465, 85 S.Ct. 1136, 1141, 14 L.Ed.2d 8 (1965) (in diversity action, federal courts apply federal procedural law); *Cleland v. Stadt*, 670 F.Supp. 814, 816 (N.D.Ill.1987) ("In a diversity action, we assess the adequacy of the pleadings under federal law, rather than the stricter requirements of Illinois law."). The federal rules require merely a "short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2). Nor are any special pleading requirements to be imposed except where such a requirement is found in the federal rules. *E.g., Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, —— U.S. ——, ——, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993) (The particularity requirement of Rule 9(b) implies that the rules impose no other particularity requirements.); *see also Triad Assocs., Inc. v. Robinson*, 10 F.3d 492, 497 (7th Cir.1993). To the extent the authority defendants attach to their opening brief required that a plaintiff plead "with particularity" the facts underlying the invoking of a discovery rule, that court's decision would not follow from subsequent precedent binding this court, and therefore does not serve as persuasive authority for this court. *See RTC v. KPMR Peat Marwick*, No. SA CV 92–125, slip op. at 5 (C.D.Cal. July 17, 1992) (attached as Exhibit A to Defendants' Memorandum in Support of Motion to Dismiss).

Plaintiff maintains, and the court agrees, that under federal pleading standards it survives the motion to dismiss as to statute of limitations. On the tort claims, the Complaint alleges that Peat Marwick's negligent practices, negligent misrepresentations and breaches of fiduciary duty "were not and could not have been discovered more than two years prior to January 11, 1990, the date on which the RTC was appointed receiver of Horizon." (Complaint ¶¶ 78, 86, 98) These pleadings, read in the totality of the Complaint (even if conceivably in a vacuum they are legal conclusions), sufficiently plead plaintiff's theory of statute of limitations for defendants' audits of years 1982 and 1983. Furthermore, the discussion thus far assumes plaintiff must affirmatively plead its compliance with the statute of limitations, a requirement all but entirely rejected by the Seventh Circuit. *Tregenza v. Great American Communications Co.*, 12 F.3d 717, 718 (7th Cir.1993) (dicta). Under *Tregenza's* approach, a conclusory pleading would be suffi-

cient, because no pleading at all would be sufficient. Since *Tregenza* involved a case where, as here, inquiry notice triggered the running of the limitations period, *id.* 12 F.3d at 721–22, it would follow that facts establishing the date of inquiry notice would not have to be plead under the logic of *Tregenza.*

■ Defendants also argue, however, that plaintiff has pleaded itself out of court on the statute of limitations issue, which a plaintiff may do where it affirmatively pleads facts that establish the statute of limitations bars its claim. *Tregenza,* 12 F.3d at 718; *Early v. Bankers Life & Casualty Co.,* 959 F.2d 75, 79 (7th Cir.1992). Here, defendants claim plaintiff has pleaded away its theory that the Illinois discovery rule saves the 1982 and 1983 allegations, by pleading facts that establish plaintiff was put on inquiry early enough that the period had run by the time the RTC succeeded to the claims asserted here. The court has examined the paragraphs of the Complaint defendants have marshalled in support of this theory, and concludes plaintiff has not pleaded itself out of court.

Defendants' first example of plaintiff having pleaded itself out of court is paragraphs 20 and 21 of the Complaint. Defendants claim that since paragraph 20 alleges that outside counsel for Horizon certified that a merger became effective November 15, 1982, and paragraph 21 alleges that based upon Peat Marwick's advice Horizon adopted a merger date of August 31, 1982, Horizon must have been on notice of any negligence related to this merger advice. Plaintiff's theory, allowing the plaintiff all reasonable inferences from the Complaint, is that Peat Marwick's advice to adopt the August 31 merger date despite the actual effective date of November 15 breached Peat Marwick's duties to Horizon. It is conceivable that inquiry notice that Horizon's injury was wrongfully caused could have come later than 1982. Peat Marwick offers another example, paragraphs 36 and 39 of the Complaint, where plaintiff alleges deficiencies in the work product of Peat Marwick. Defendants assert that Peat Marwick's financial state-

ments should have put Horizon on notice of problems in Peat Marwick's 1982 advice. Perhaps so, but the Complaint does not compel that conclusion without reference to outside facts. Paragraph 56 is a closer call. In paragraph 56 plaintiff alleges that Peat Marwick made certain deletions to its 1983 draft management letter that described material weaknesses in internal controls of Horizon. These deletions, paragraph 56 alleges, "were made at the insistence of Horizon's management." (Complaint ¶ 56) Defendants therefore raise a seemingly valid point: How could Horizon have failed to discover its injury or that it was wrongfully caused until 1988 or later under these circumstances? The answer to defendants' question for these purposes lies in recalling that this is a Rule 12(b)(6) motion to dismiss. Plaintiff is entitled to the reasonable inference that the interaction of Peat Marwick and Horizon during 1983 involved representations by Peat Marwick, and that any changes to a draft, even if initially suggested by Horizon's management, were agreed to and incorporated as part of the representations by Peat Marwick.[2] Here, plaintiff alleges a lapse by Peat Marwick in its examination of Horizon's internal controls. In short, while defendants' motion raises fact issues on which it could conceivably prevail, they have not satisfied their heavy burden of establishing that it is beyond doubt that the plaintiff is unable to prove any set of facts that would entitle it to relief.

■ As far as the contract claim is concerned, the issue the parties have focused on as dispositive is whether the Illinois ten-year statute of limitations for written contracts applies. 735 ILCS 5/13–206. Of course, on a motion to dismiss pursuant to Rule 12(b)(6), the relevant question is whether plaintiff has sufficiently alleged that the ten-year limitation would apply. Giving its pleadings the benefit of the doubt and all reasonable inferences, plaintiff has done so by alleging the agreements at issue were written. (Complaint ¶¶ 49, 88) Accordingly, defendants' argument in this regard fails as well.

---

**2.** Defendants' theory of imputation of the knowledge of Horizon's management to Horizon cannot be resolved on the face of the complaint. *See*

*Cenco, Inc. v. Seidman & Seidman,* 686 F.2d 449, 454–55 (7th Cir.), *cert. denied,* 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982).

Accordingly, as to the statute of limitations issue, defendants' motion to dismiss is denied.[3]

### III. MOORMAN *DOCTRINE ATTACK ON THE FIRST CLAIM FOR RELIEF*

■ Defendants attack plaintiff's first claim for relief in negligence by asserting the Illinois *Moorman* doctrine. That doctrine, enunciated by the Illinois Supreme Court in *Moorman Manufacturing Corp. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982), establishes that merely economic damages generally are not recoverable in tort. The *Moorman* case itself was a strict liability case, but the court's language broadly applied the doctrine to traditional negligence claims as well. *Id.* at 88, 61 Ill. Dec. at 754, 435 N.E.2d at 451.

Since *Moorman*, it has become clear that the general rule is that the doctrine could apply to any negligence claim. *See, e.g., Sporer v. DMJ Leasing & Trucking, Inc.*, No. 91 C 6833, 1994 WL 22319, at *4 (N.D.Ill. Jan. 24, 1994) ("The *Moorman* economic loss doctrine has been extended beyond the traditional products liability context. . . ."). However, the Illinois Supreme Court has held that the *Moorman* doctrine will not bar economic recovery in an attorney malpractice case. *Collins v. Reynard*, 154 Ill.2d 48, 180 Ill.Dec. 672, 607 N.E.2d 1185 (1992). The *Collins* court was careful, though, to limit the scope of its holding: "[T]he ruling we announce today is limited to the specific field of lawyer malpractice as an exception to the so-called *Moorman* doctrine and to the distinctions separating contract from tort." *Id.* at 52, 180 Ill.Dec. at 674, 607 N.E.2d at 1187. Thus, the *Collins* decision only goes so far, but surely the logic of *Collins* must be used in resolving other *Moorman* doctrine issues.

As a court of this district applying Illinois law observed, how far the *Collins* exception to the *Moorman* doctrine will go depends upon how one key phrase of the *Collins* opinion is applied. *FDIC v. Miller*, 781 F.Supp. 1271, 1277 (N.D.Ill.1991). "Tort law," the *Collins* court emphasized, "applies in situations where society recognizes a duty to exist wholly apart from any contractual undertaking." *Collins*, 154 Ill.2d at 51, 180 Ill.Dec. at 673, 607 N.E.2d at 1186. In *FDIC v. Miller*, Judge Holderman held that the FDIC's claim of breach of fiduciary duty and negligence by the directors of a savings and loan would survive the *Moorman* doctrine because the claim sprang out of extra-contractual, fiduciary duties. 781 F.Supp. at 1277 (applying *2314 Lincoln Park West Condominium Assoc. v. Mann, Gin, Ebel & Frazier, Ltd.*, 136 Ill.2d 302, 144 Ill.Dec. 227, 555 N.E.2d 346 (1990)). By the logic of *Miller*, whether to apply the *Moorman* doctrine here would turn on whether the relationship between Peat Marwick and Horizon Federal entailed duties outside of the contractual relationship.

Here, however, plaintiff's first claim for relief sounds in professional negligence related to duties undertaken by contract. To apply the *Miller* analysis here to save the negligence claim the court would have to turn its back on *Moorman* and its progeny. The allegation of fiduciary responsibility does not appear in the first claim for relief, and the relationship between Horizon and Peat Marwick arose out of a contract. Furthermore, the court's disposition as to the fourth claim (for breach of fiduciary duty) makes clear no fiduciary relationship can be alleged here. Thus, to allow a claim for purely economic damages to proceed on the first claim would be to allow such a claim on economic damages from simple professional negligence where a contractual relationship existed and no exception to the *Moorman* doctrine can be found in Illinois law.

Accordingly, defendants' motion is granted to the extent it seeks dismissal of plaintiff's first claim for relief.[4]

---

3. The above analysis leaves it unnecessary to address the issue of whether this case could involve a "continuous course of treatment," another point of contention.

4. Defendants do not challenge plaintiff's second claim for relief, which alleges negligent misrepresentation. Illinois courts have held that, even under the *Moorman* doctrine, "where the accountant is in the business of giving information to clients to be used in the clients' business

## IV. COUNT IV AND THE QUESTION OF FIDUCIARY DUTY

■ The fourth claim alleges breach of fiduciary duty by defendants. Defendant's motion to dismiss as to the fourth claim for relief raises the question whether an independent auditor can be a fiduciary to the financial institution it is auditing.

As the parties acknowledge, there is not much applicable Illinois or Seventh Circuit precedent here. The parties have fought over a few paragraphs in *Congregation of the Passion v. Touche Ross & Co.*, 224 Ill.App.3d 559, 590, 166 Ill.Dec. 642, 663, 586 N.E.2d 600, 621 (1991), *appeal allowed*, 144 Ill.2d 632, 169 Ill.Dec. 140, 591 N.E.2d 20 (1992). But this opinion does not resolve the issue. In *Congregation of the Passion* the broad fiduciary duty question was not squarely before the court, and the comments the court made cannot be extrapolated to a clear holding of law on this point.

■ The parties have turned to cases from outside the jurisdiction. An examination of those cases reveals that many courts squarely reaching the question have held that an independent auditor generally is not in a fiduciary relationship with its client. Some courts have gone as far as to observe that the nature of the independent auditor precludes a finding of fiduciary duty. The duty of a traditional fiduciary is to act "in a representative capacity for another in dealing with the property of the other," whereas an auditor acts "independently, objectively and impartially, and with the skills which it represented to its clients that it possessed." *Franklin Supply Co. v. Tolman*, 454 F.2d 1059, 1065 (9th Cir.1971). A persuasive treatment of the issue is found in *FDIC v. Schoenberger*, 781 F.Supp. 1155, 1157–58 (E.D.La.1992). Applying Louisiana law, the *Schoenberger* court agreed that "accountants do not owe a fiduciary duty to their clients when providing services as auditor; rather the nature of an independent auditor is that it will perform the services objectively and impartially." *Id.* at 1157 (citing cases); *see also Mishkin v. Peat, Marwick, Mitchell & Co.*, 744 F.Supp. 531, 552 (S.D.N.Y.1990) ("'Courts do not generally regard the accountant-client relationship as a fiduciary one.'" (citation omitted)); *cf. Painters Dist. Council No. 21 Welfare Fund v. Price Waterhouse*, 879 F.2d 1146, 1149–50 (3d Cir. 1989) (independent accountant not an ERISA fiduciary). *Contra In re Investors Funding Corp.*, 523 F.Supp. 533, 542 n. 4 (S.D.N.Y. 1980). None of this is to suggest that the auditor is free of duties, just that "they are not duties as a fiduciary." *FDIC v. Schoenberger*, 781 F.Supp. at 1158. The United States Supreme Court has agreed at least to the bedrock thesis under this legal conclusion. *See United States v. Arthur Young & Co.*, 465 U.S. 805, 818, 104 S.Ct. 1495, 1503, 79 L.Ed.2d 826 (1984) ("[T]he independent auditor assumes a *public* responsibility transcending any employment relationship with the client.... This 'public watchdog' function demands that the accountant maintain total independence from the client at all times and requires complete fidelity to the public trust."). The reasoning of the above cases persuades the court that this view of the relationship between independent auditor and client comports with Illinois law.

Perhaps in some instances the function of an independent auditor could overlap into areas in which it would hold a fiduciary duty to its client. But in general that is not the case, and nothing in plaintiff's allegations raises any special instance here. All of plaintiff's allegations relate to Peat Marwick's alleged mishandling of its role as independent auditor. Often, in fact, plaintiff complains of derogation of the duties imposed on Peat Marwick *because of its independence.* (*E.g.*, Complaint ¶¶ 2(a)(4), 52, 65) Nor does plaintiff assert any special circumstances in its briefs, choosing instead to challenge the basic legal conclusion the court has reached.

Accordingly, defendants' motion to dismiss is granted to the extent it seeks dismissal of plaintiff's fourth claim for relief.

---

transactions," negligent misrepresentation may be alleged. *Jerry Clark Equipment, Inc. v. Hibbits*, 245 Ill.App.3d 230, 237, 183 Ill.Dec. 931, 935, 612 N.E.2d 858, 862 (1993). Defendants do not concede the applicability of this caselaw here, but neither have they challenged its applicability. Accordingly, the court does not reach *Moorman* doctrine issues regarding the second claim for relief.

## *CONCLUSION*

Defendants' Motion to Dismiss portions of the Complaint is granted in part and denied in part. Counts I and IV of the Complaint are dismissed.